UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BEVERLY F. WOODWARD,

       Plaintiff,

v.                                     Case No. 2:20-cv-417-NPM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

**OPINION AND ORDER**

Plaintiff Beverly Woodward seeks judicial review of a partially favorable decision awarding Social Security disability insurance benefits. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 22). As discussed in this opinion and order, the decision of the Commissioner is reversed and remanded.

**I.**    **Eligibility for Disability Benefits and the Administration's Decision**

**A.**    **Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like standing or reaching, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when such functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

B.   **Factual and procedural history**

On January 19, 2012, Woodward applied for disability insurance benefits. (Tr. 118, 131, 186). Woodward asserted a disability onset date of February 10, 2011, due to the following: deep vein thrombosis (DVT); chronic pain; depression; anxiety; panic attacks; bursitis in hip and lower back on right side; sciatica pain; headaches; and neck pain. (Tr. 109, 119). On the alleged onset date, Woodward was 50 years

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

old. (Tr. 186).[5] She has a high school education, and she last worked as a custodian and secretary at a school. (Tr. 226, 252, 259).

Woodward's application was administratively denied initially on April 16, 2012, and upon reconsideration on June 29, 2012. (Tr. 133, 140). At Woodward's request, Administrative Law Judge T. Whitaker held a hearing on November 18, 2014. (Tr. 60-107, 147). The ALJ issued an unfavorable decision on January 22, 2015, finding Woodward not disabled from February 10, 2011, through the date of decision. (Tr. 11-31).

Woodward's timely request for review by the administration's Appeals Council was denied. (Tr. 1-4). Woodward then obtained judicial review from this Court, which reversed the decision of the Commissioner because the ALJ did not provide good cause for affording less than controlling weight to the opinions of Woodward's treating physician—Dr. Fred Liebowitz. (Tr. 983-993); s*ee Woodward v. Berryhill*, No. 2:16-cv-572-FtM-DNF, 2017 WL 4161659 (M.D. Fla. Sept. 20, 2017) (Frazier, J.).

While the civil case was pending in federal court, Woodward filed subsequent claims for disability insurance benefits on June 28, 2016, and December 13, 2017. (Tr. 851, 969-982, 1002-1003, 1042-1045, 1091-1094). These claims led to an

---

[5] But as of the ALJ's established onset date of December 1, 2014, discussed throughout this opinion, Woodward was nearly 55 years old.

administrative finding that Woodward was disabled as of January 23, 2015. Therefore, on remand from this Court, the administration was limited to reviewing the period from the alleged onset date of February 10, 2011, to January 22, 2015. (Tr. 851, 1002-1003).[6]

ALJ Maria C. Northington held a hearing on January 9, 2019. (Tr. 877-964). A vocational expert, a medical expert—Dr. Alexandre Todorov—and Woodward testified during the hearing. (Tr. 878). The ALJ issued a partially favorable decision on March 5, 2019, finding Woodward not disabled prior to December 1, 2014, but finding that Woodward became disabled on that date and has continued to be disabled through the date of decision. (Tr. 846-868).

Woodward filed exceptions to the ALJ's 2019 partially favorable decision. (Tr. 1087-1090). But Woodward's timely request for review by the Appeals Council was denied. (Tr. 838-844). The case is ripe, once again, for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Docs. 12, 17).

---

[6] Despite the Appeals Council's order stating ALJ Northington's review would be limited to the period prior to January 23, 2015, the ALJ voiced skepticism that the Appeals Council could make the State agency determination binding without actually affirming or reopening such determination. (Tr. 883, 963). Ultimately, it was a nonissue because the ALJ did not revisit the period beginning January 23, 2015. (Tr. 963).

## C.    The ALJ's decision

An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record.

This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Woodward met the insured status requirements through September 30, 2015. (Tr. 853). At step one of the evaluation, the ALJ found Woodward had not engaged in substantial gainful activity since the alleged onset date. (Tr. 853). At step two, the ALJ characterized Woodward's severe impairments from February 10, 2011, until December 1, 2014 as: anxiety, three episodes of deep venous thrombosis (DVT), stage 3 chronic kidney disease (CKD), depression mood disorder, and obesity. (Tr. 854). Beginning on December 1, 2014, the ALJ found

6

Woodward had the same severe impairments as before but with the addition of mild multilevel degenerative disc disease of the cervical spine including mild stenosis with disc protrusions at three levels and mild flattening of the ventral cord at C4-5. (Tr. 854). At step three, the ALJ determined Woodward did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 854).

As a predicate to step four, the ALJ arrived at the following RFC determination *for both before and after* December 1, 2014:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant retains the capacity to perform light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as, lift/carry 10 pounds frequently. The claimant has no limits for sitting in an eight-hour workday. She is capable of standing for one hour at a time for a maximum of three hours in one [sic] in an eight-hour workday day [sic]. She is capable of walking for up to 30 minutes at one time with a maximum of walking for two hours in an eight-hour workday. She is able to perform occasional postural functions of climbing ramps/stairs, kneeling, and stooping. She is to perform no crawling, no squatting, no crouching and no climbing of ladders/ropes/scaffolds. There are no upper extremity limitations. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. No work with vibratory tools or equipment. In the course of work, the claimant should be allowed the ability to optionally alternate between sitting and standing about every 30 to 60 minutes, but such would not cause her to be off-task or leave work-station. Secondary to her mental impairments, the claimant retains the capacity to understand, remember and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work.

(Tr. 856, 864-865). Consequently, at step four, the ALJ found Woodward unable to perform any past relevant work. (Tr. 866).

At step five, an ALJ must determine whether a claimant can adjust to other work sufficiently available in the economy based on age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c). With respect to age, the administration has adopted rules to account for the decreased likelihood of adjusting to a new job with increasing age that—in combination with other factors—provide a regulatory conclusion that there is an insufficient number of jobs to which the claimant could adjust. *See* 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P, App. 2. These rules generate "grids," with each grid based on whether the claimant's RFC allows for the full range of occupations classified as sedentary, light, or medium on the physical exertion scale.

Among other age groups, these grids differentiate between persons of advanced age (55 and over) and those approaching advanced age (50-54). *See* SSR 83-11, 1983 WL 31252 (S.S.A. 1983). The grids are not applied mechanically, and ALJs are afforded latitude to treat a claimant as within a higher age range when they are within months of its threshold. *See* 20 C.F.R. § 404.1563(b) ("We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."); *Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x

8

841, 846 (11th Cir. 2017) (noting the Eleventh Circuit "has proscribed the mechanical application of the Grids 'on the basis of a claimant's age, in order to establish conclusively a claimant's adaptability to a new work environment'") (citing *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987)).

Having arrived at a uniform RFC for the entire time period at issue, the ALJ apparently chose December 1, 2014, as a date close enough to Woodward's 55th birthday to give her the benefit of the advanced-age rules from that date forward, and to subject her to the approaching-advanced-age rules leading up to that date. (Tr. 866-868, 936). With a high school education, no recent education allowing for direct entry into a new job, and no transferable skills, even if Woodward's RFC allowed for the full range of all light jobs, Rule 202.06 of the advanced-age rules directed a finding of disabled. (Tr. 866-868); 20 CFR § Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.06. And with an RFC that allowed for less than the full range of light jobs, and finding no transferable skills, the ALJ applied this rule and found Woodward disabled as of December 1, 2014. (Tr. 866-868).

But applying the approaching-advanced-age rules to the time before December 1, 2014, regardless of the lack of transferability of skills, Rule 202.14 directed a (rebuttable) finding of not disabled if someone was capable of the full range of light work. (Tr. 866-867). Since Woodward was unable to perform the full range of light work, the ALJ solicited opinion testimony from a vocational expert to

determine if there were a sufficient number of jobs in the economy to which Woodward could adapt. (Tr. 867); *see also* SSR 85-15, 1985 WL 56857, *3 (S.S.A. 1985) (noting a decisionmaker will often need to consult a vocational resource to determine how much a claimant's occupational base (*e.g.*, sedentary, light) is reduced by the effects of nonexertional impairments). The vocational expert testified three representative occupations exist that Woodward could perform prior to December 1, 2014. (Tr. 867, 955). And based on this vocational testimony, the ALJ found Woodward could have adapted to other jobs prior to December 1, 2014. (Tr. 866-867). But beginning on December 1, 2014, the ALJ—applying grid Rule 202.06—found there were no jobs existing in significant numbers in the national economy that Woodward could perform. (Tr. 867-868).

## II.    Analysis

Woodward's appeal presents the following issues:

(1)   whether the ALJ properly evaluated Woodward's spinal impairments;

(2)   whether the ALJ properly evaluated the opinion of Woodward's treating physician, Dr. Liebowitz;

(3)   whether the ALJ properly evaluated the opinion of the medical expert, Dr. Todorov;

(4)   whether the ALJ properly considered Woodward's subjective statements; and

(5)   whether reversal is an appropriate remedy.

(Doc. 22, pp. 29, 41, 52, 58).

## A.     Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963

F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B.   Whether the ALJ properly employed the five-step analysis when evaluating Woodward's spinal impairments

Among other events in her medical history, Woodward was under the care of her treating physician and pain management specialist, Dr. Fred Liebowitz, since at least 2009 until at least 2015. (Tr. 338-342, 1141). Liebowitz treated Woodward on a monthly basis for years primarily for her lumbar and cervical spine problems. (Tr. 338-342, 352-411, 592-703, 738-787, 1140-1156; *see also* Tr. 893-894). Woodward was nearly always on progressively increased doses of oxycontin, oxycodone, morphine, or some combination of pain killers the entire time (*e.g.*, Tr. 283-285, 352-354, 358, 361, 365, 373-374, 376-377, 382, 400, 408-409) so that she could tolerate her day-to-day existence and occasionally engage in the slightest of household activities. (Tr. 887, 889, 895-898, 907-909).[7] Liebowitz continually assessed her as having chronic degenerative disc disease of both the lumbar and cervical spine with radiculopathy (pain radiating to the extremities) (*e.g.*, Tr. 352,

---

[7] Despite Woodward's testimony that chores often did not get done, that she and her husband often ate out or made light dinners, had trouble grocery shopping, did only enough laundry to have clean clothes to wear, and could not keep the house clean, the ALJ mischaracterized Woodward as having "no problems" doing daily chores (Tr. 942). Nor did Woodward claim to have *no* problems with daily activities as ALJ Northington suggests (Tr. 942). To the contrary, Woodward testified during the first ALJ hearing she could sweep floors for up to 10 minutes (Tr. 80, 89-91), could sometimes load the dishwasher (Tr. 80), and had trouble grocery shopping (Tr. 93). Her 2012 function report included similar feedback. (Tr. 242-246).

354-355, 360-361, 364, 368-369, 372-373, 376-377, 381-382) and repeatedly noted that Woodward could not afford MRIs to further confirm his diagnoses. (Tr. 353, 365, 377, 383, 387, 393, 398, 423, 628, 638, 642, 646).

Ultimately, Woodward was able to obtain a lumber MRI on September 14, 2014, confirming disc bulge. (Tr. 743) (signed by Dr. Liebowitz). Before insurance would allow her to obtain a cervical MRI, Woodward needed to first visit with a neurologist—so Liebowitz referred her to Gerardo Gamez, M.D. (Tr. 829). Dr. Gamez examined Woodward and her medical records in November 2014 and concurred with Liebowitz. He assessed chronic degenerative disc disease of the lumbar spine, as further confirmed by the September 2014 MRI, and he joined in Liebowitz's conclusion that Woodward likely had degenerative disc disease of the cervical spine. (Tr. 797-800, 1158-1161). This was further confirmed by a December 19, 2014 MRI of the cervical spine. (Tr. 801-802) (signed by Drs. Liebowitz and Robert Caignet, D.O.).

Liebowitz supplied a number of opinions about Woodward's functional limitations. Liebowitz completed a Treating Source Neurological Questionnaire on July 11, 2012, diagnosing cervical radiculitis (left). He opined Woodward had decreased grip strength, decreased ability to perform fine manipulation, and sensory and motor loss related to her neurological impairment. He explained that Woodward complained of progressively worse radicular neck pain, with sensory and motor

deficits, but that she could not afford an MRI at that time. He also noted that Woodward has had deep vein thrombosis of the left lower extremity and was currently on Coumadin (and will be indefinitely). Liebowitz rated Woodward's grip strength a three out of five, and he rated her lower extremity strength a five out of five. (Tr. 422-423).

Two years later, on November 13, 2014, Liebowitz completed a Physical Capacity Evaluation as to Woodward's impairments as of February 10, 2011. He opined that Woodward could stand or walk less than one hour at a time, and she could do so for two hours total throughout the day in an 8-hour workday. Liebowitz further opined Woodward could sit for two hours total at one time, and could sit for a total of four hours throughout the day in an 8-hour workday. He opined Woodward could lift up to ten pounds occasionally during a workday. And Liebowitz opined Woodward: could use her hands for repetitive simple grasping, pushing and pulling, and fine manipulation; could use her feet for repetitive movements as in operating foot controls; and could reach above shoulder level. But he found Woodward unable to bend, squat, crawl, or climb. (Tr. 789-790).[8]

Finding Liebowitz's functional-limitation opinions inconsistent with his history of treatment notes, the first ALJ gave little weight to them. (Tr. 28). On judicial review, this Court reversed that conclusion, finding that substantial evidence

---

[8] Todorov also opined Woodward could not squat, crawl or climb ladders. (Tr. 921).

did not support a finding of inconsistency and an assignment of little weight to Liebowitz's opinions. (Tr. 983-993).

On remand, and based in part on Liebowitz's opinions, Woodward's counsel argued that the RFC should limit her to no more than sedentary work. (Tr. 882, 940). And he further pointed out that the grid for sedentary work would therefore direct a finding of disabled as of the alleged onset date of February 2011. (Tr. 882, 948). But the ALJ implicitly disagreed with the Court's conclusion about Liebowitz, instead stating that she agreed with ALJ Whitaker's conclusion. (Tr. 963). And so, for the same reason ALJ Whitaker provided, ALJ Northington assigned little weight to Liebowitz and arrived at an RFC that limited Woodward to light work with some restrictions. (Tr. 856, 859, 863-864).

Based on subsequent claims filed with the administration, Woodward had already been found disabled as of January 23, 2015. (Tr. 1002-1003). And during the hearing, the ALJ said she was willing to give Woodward another month of disability benefits. (Tr. 936, 963). This apparently led to the selection of December 1, 2014, as the date on which the ALJ would give Woodward the benefit of the advanced-age rules that, in conjunction with the grid for light work, would direct a finding of disabled. (Tr. 936; *see also* Tr. 940-941). Thus, it appears the ALJ proceeded through the five-step analysis with this endpoint in mind.

At step two, the ALJ added cervical spine multi-level degenerative disc disease as a severe impairment as of December 1, 2014. (Tr. 854). But the RFCs for both before and after December 1, 2014, were identical. (Tr. 856, 864-865). And this highlights the error of this outcome-oriented approach because, "[b]y definition, a severe impairment limits significantly a claimant's ability to do basic work activities." *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010). So, the ALJ "needed to articulate what [Woodward's] significant limitations were from that impairment, or if there were not any such limitations, state that the [impairment] [was] a non-severe impairment. The [ALJ] cannot have it both ways." *Battles v. Colvin*, No. 8:15-cv-339-T-33TGW, 2016 WL 3360428, *3 (M.D. Fla. May 20, 2016), *report and recommendation adopted sub nom. Battles v. Comm'r of Soc. Sec.*, No. 8:15-cv-339-T-33TGW, 2016 WL 3258423 (M.D. Fla. June 14, 2016). Or, the ALJ needed to explain how the RFC for the period before December 1, 2014, already fully accounted for the additional severe impairment. She did neither.

Instead, the ALJ reasoned that the post-December 1st RFC was justified because, by that point, Woodward's alleged limitations found support in the medical records. (Tr. 865). But the pre- and post-December 1st RFCs are identical, which suggests that Woodward's alleged limitations found support in the medical records both before and after that date. Further suggesting this is the case, the ALJ cited

evidence predating December 1, 2014, as corroborating Woodward's alleged limitations. (Tr. 865). In particular, the ALJ credited Dr. Gamez's November 20, 2014, examination. (Tr. 865). Gamez found moderate triggers throughout the spine. (Tr. 1159). And citing the September 2014 MRI, he concluded that Woodward's longstanding complaints about lumbar pain were the result of a chronic degenerative disc disease. (Tr. 798, 800, 1158, 1160). And just like Liebowitz, Gamez believed Woodward had degenerative disc disease of the cervical spine as well (Tr. 800, 1160), which was then confirmed by the December 2014 MRI (Tr. 801). This evidence supports rather than contradicts Liebowitz.

The ALJ arranged for a neurologist, Dr. Todorov, to review Woodward's records—but not examine her, like Liebowitz and Gamez had—and testify at the hearing after taking an hour or two to review Woodward's medical records. (Tr. 877, 934, 1253-1257). The ALJ assigned great weight to Todorov's opinion when conducting her five-step analysis. (Tr. 863).

But, contrary to her five-step rationale, there was no indication in Todorov's testimony that the severity of Woodward's impairments or the functionally limiting effects of them somehow changed on or about December 1, 2014. Indeed, Todorov testified that Woodward's cervical and lumbar spine problems were a "continuous issue." (Tr. 917). Moreover, there are no notable differences between Liebowitz's exam of Woodward in January 2015 and his examinations of her in the months and

years before. (*E.g., compare* Tr. 803-806 *with* Tr. 744-747) (positive straight leg raises on right leg at 45 degrees; mild to moderate antalgic gait; cervical spine tenderness). And Todorov testified that Liebowitz's physical findings were consistent throughout. (Tr. 921). If, as the ALJ reasoned, Woodward's alleged limitations were consistent with medical evidence like Gamez's November exam (which relied on the September 2014 MRI) and Liebowitz's January 2015 exam, then by the same token, the alleged limitations were consistent with the similar evidence that came before.

Thus, substantial evidence does not support the apparently outcome-driven selection of December 1, 2014, as the onset date. Instead, it appears that if the five steps are properly followed without a pre-ordained outcome in mind and the evidence is properly weighed, an earlier onset date may very well be arrived at. *See* SSR 18-1p, 2018 WL 4945639 (S.S.A. 2018) ("The date that the claimant first met the statutory definition of disability must be supported by the medical and other evidence and be consistent with the nature of the impairment(s)."). [9]

### C.   Woodward's remaining arguments

Woodward's remaining issues focus on whether the ALJ properly evaluated the opinions of Dr. Liebowitz and Dr. Todorov, and whether the ALJ properly

---

[9] SSR 83-20 was rescinded and replaced on October 2, 2018 by SSR 18-1p and SSR 18-2p. Because the ALJ decision at issue is dated March 5, 2019, the new SSR applies even though Woodward applied for disability insurance benefits on January 19, 2012. *See* SSR 18-1p.

considered Woodward's subjective statements. Because the Court finds that remand is warranted due to the ALJ's improper and illogical treatment of the spinal impairment issues during the five-step analysis, the Court need not address the other arguments raised by Woodward. *See Francis v. Saul*, No. 8:18-cv-2492-T-SPF, 2020 WL 1227589, *4 (M.D. Fla. Mar. 13, 2020) (citing *Demench v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that it is unnecessary to review other issues raised on appeal where remand is required and such issues will likely be reconsidered in the subsequent proceedings); *Bekiempis v. Colvin*, No. 8:16-cv-192-T-27TGW, 2017 WL 459198, *5 (M.D. Fla. Jan. 17, 2017) (finding it appropriate to pretermit discussion of two other contentions raised by claimant in light of a remand, which would generate a new decision)).

However, upon remand, the Commissioner should also reconsider its reasons for discounting Dr. Liebowitz's opinions. The District Court previously remanded on this issue and pointed to eleven examples showing Liebowitz's opinions were internally consistent and supported his opinions. (Tr. 989-991). Even though the ALJ pointed to specific examples this time, the ALJ yet again discounted Liebowitz's opinions primarily due to inconsistency. (Tr. 859, 863). The ALJ should revisit whether and to what extent it might be appropriate to afford less than controlling

weight to Liebowitz. *See* 20 C.F.R. § 404.1527(c) (providing an array of factors an ALJ must consider when affording less than controlling weight to a treating source's medical opinion).

Woodward also seeks reversal as a remedy. (Doc. 22, pp. 67-68). Remanding the case with an order awarding disability benefits is permissible "where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (citing *Bowen v. Heckler*, 748 F.2d at 635-636 (11th Cir. 1984)). This standard has not been met here, and the Court declines to award benefits.

## III.   Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds the decision of the Commissioner is not supported by substantial evidence.

It is **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). "Any issues relating to the claim(s) may be considered by the Appeals Council or administrative law judge whether or not they were [previously] raised in the administrative proceedings." 20 C.F.R. § 404.983(a). The Clerk of Court is

directed to enter judgment, terminate any pending motions and deadlines, and close the case.

      **ORDERED** in Fort Myers, Florida on September 28, 2021.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE